[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 82 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 83 
It appears from the books of M. Morgan's Sons, bankers, the financial agents of the New York, Providence and Boston Railroad Company, that, in June, 1884, when the firm failed and made a general assignment, without preference, for the benefit of creditors, it was indebted to plaintiff in the sum of $94,000.
Henry Morgan, the defendant's assignor, was a member of the firm of M. Morgan's Sons. He also made a general assignment, without preference, of his individual property. The liability of the firm to the plaintiff for the amount on deposit is unquestioned. That the balance of the estate of Henry Morgan, after the payment of his individual liabilities, must *Page 85 
be applied in payment of the firm obligations follows as a matter of law. The question now to be determined is whether or not Henry Morgan is also liable for such amount as treasurer of the plaintiff.
There is no difference in principle or precedent between the powers, duties and liabilities of the agents of corporations and those of natural persons, unless expressly made by the act of incorporation or by-laws. (Angell Ames on Corp. [9th ed.] § 315; Pomeroy's Eq. Juris. vol. 2. § 1062 and notes.)
The stipulation states that the plaintiff is a foreign corporation, to wit, a corporation of the state of Rhode Island, but is silent as to what are the powers, functions and duties of the treasurer of such foreign corporation, as determined by its charter and by-laws. Neither does it appear that Henry Morgan has been guilty of a breach of any duty imposed, by the contract between the corporation and him as its treasurer, or by the charter and by-laws. The stipulation is silent upon those points.
In the absence of such proof, as between Henry Morgan as such treasurer and the plaintiff, he must be held to the same measure of liability, and none other, as that imposed upon all classes of persons who are clothed with fiduciary relations towards property in which others are beneficially interested.
By such standard he cannot, in any event, be held liable to respond to the plaintiff for moneys not received by him, and, we think, it cannot be held, from the evidence before us, that the treasurer received from the plaintiff the moneys in controversy.
Many years prior to the election of Henry Morgan as treasurer, the firm of Matthew Morgan Son were the financial agents of the plaintiff, and after the death of Matthew Morgan the firm of M. Morgan's Sons continued to act in such capacity down to the time of the making of the general assignment.
As financial agents of the plaintiff the firm kept the transfer books of the railroad company, paid all dividends to stockholders, frequently advanced money to the company and *Page 86 
neither charged nor allowed interest on the railroad company's account.
On the part of the railroad company, it is not only admitted, in so many words, that M. Morgan's Sons were its financial agents, but, in addition, it appears, from the manner in which the plaintiff conducted its business, that while Henry Morgan was its treasurer, it, nevertheless, recognized and permitted the exercise of certain functions by M. Morgan's Sons, whom they termed financial agents, which were not attempted to be exercised by its treasurer.
The keeping of the transfer books of the company, the payments of dividends, the advancement of moneys, the waiver of interest on advancements, the refusal to allow interest on deposits, by the financial agents, were ratified and acquiesced in by the corporation.
Beyond this the plaintiff distinctly recognized the relation existing between it and M. Morgan's Sons by keeping the accounts on its own books in the name of such firm, and by publishing in its annual reports, distributed to stockholders, that its funds were in the hands of M. Morgan's Sons.
It appears clearly, therefore, that the railroad company recognized the relation existing between it and its financial agents to be separate and apart from the obligations and duties of its treasurer. That in its transactions with M. Morgan's Sons as financial agents, it did not transact nor did it understand it was transacting business with Henry Morgan as treasurer.
Now it appears that, prior to December, 1880, and prior also to the deposit of the moneys in question, remittances were, for a time, made to the order of the treasurer, who deposited them with M. Morgan's Sons, but about that time, at the request of the treasurer, because of expected absence, the remittances were thereafter sent to the order of the firm of M. Morgan's Sons. The financial agents, therefore, and not the treasurer, received the moneys with which the plaintiff seeks to charge the treasurer in this action, and under no rule of liability applicable to agents or trustees, can the *Page 87 
plaintiff recover of Henry Morgan that which he has not received, and which it has, in fact, paid to other parties.
If, however, it be conceded, as contended for by the respondent, that the sending of remittances to the order of M. Morgan's Sons was, in effect, sending them to the treasurer (because done at his request), and that the deposit with the firm must be deemed a deposit by him, liability of Henry Morgan as treasurer to respond for the fund is not established. The moneys are not now in his possession; he has not wasted or mixed them with his own, but has properly discharged his trust by depositing the funds with the banking firm recognized by the plaintiff as its financial agent and place of deposit for a long period of years. Had the designation of M. Morgan's Sons as the place of deposit been made by the treasurer, in the first instance, instead of the plaintiff, and conceding, further, that he can be held to have received and deposited the moneys with the banking firm, still he cannot be held liable as treasurer because his act in so doing was fully ratified by the plaintiff.
His request that the remittances be sent to M. Morgan's Sons, because of his intended absence, was a distinct notice of the place of deposit. It called the attention of plaintiff sharply to the fact, and plaintiff acquiesced in the depository by the sending of remittances to the order of the firm, and further evidenced the acquiescence by keeping the account on the books of the corporation, in the name of the banking firm, and by reporting to its stockholders that its funds were in the hands of M. Morgan's Sons.
The conduct of the corporation constituted a complete ratification of the act of the treasurer (if his act it was) in selecting the place of deposit, and absolved him from liability in that regard.
It follows, as the necessary result of our views, that the judgment appealed from should be reversed, with costs.
All concur.
Judgment reversed. *Page 88